Alright, our second case for this morning is Deborah Walton v. EOS CCA. Ms. Walton, do you need something? No, I didn't know it was going to start right now. You are going to start right now, yes. Good morning, your honors. With all due respect, if it may please the court, my name is Deborah Walton. I'm a pro se litigant and the appellant in this case. I bring this case before the court because I believe that the district court erred when they granted summary judgment in favor of the appellee. Since I've established proximate cause, I'd like to focus on two other issues that I addressed in my brief. I'll refer to myself as Walton in this. Walton was not afforded due process. While Walton was preparing for summary judgment, she was approached by opposing counsel to combine her motions. However, she declined to do so. So since she was a pro se litigant, she informed the counsel that it would have confused her. Yet, opposing counsel insisted that she combine the cases. And they motioned the court to order Walton to combine the dispositive motions, at which time the court did. Therefore, Walton requested an emergency hearing to gain clarity on how to proceed. However, an order was never issued denying the hearing, yet the hearing never took place. Therefore, Walton proceeded to prepare a combined cross motion for summary judgment, response motion, and reply motion, all in one with unanswered questions from the court. This court has longstanding opinion on the importance of providing a pro se litigant with adequate notice when a motion for summary judgment is initiated by opposing counsel. Walton referenced in her brief the authority from this court in 1982, Lewis v. Faulkner. However, there has been more recent opinions from this court in 2013, Tokovic v. Walmart, and in 2015, Dyering v. Wilson clearly outlined that adequate notice should be provided to a pro se litigant. The second issue. The district court judge erred when she ignored trial rule 72B. While the district court judge ruled in favor of the appellee, she cited in her order that Walton did not provide authority to the magistrate's report and recommendation. However, this was not the case. Authority was cited to portions of the report that addressed a genuine issue of material facts that were in dispute. Walton also objected to the magistrate's report and recommendation in its entirety. And her objective was not only to survive summary judgment, but to trigger the district court judge to comply with trial rule 72B. Walton went beyond the scope of the requirements. According to 72B, the requirements are specific. Objections require objecting parties only to specify the findings, conclusions, recommendations, or other specific parts of the magistrate judge's report and recommendations to which they object in order to invoke du nouveau review. They are not required to present the legal factual bases of their objections. Walton cited authority from 1999 Johnson v. Zima systems from this court. However, when Walton set forth the entirety of her objection, she stated material facts that were in dispute. EOS violated the Fair Debt Collection Practices Act and the Fair Credit Reporting Act because they reported inaccurate information to all three credit bureaus. Can I ask you, in a word, is your primary concern with the facts of what they reported, or is it with the legal question whether somebody in EOS's position can just rely on the information that the original creditor here, AT&T, gave to them? Because as I read all of this, it seemed to me your primary concern was that EOS never went back to AT&T to check out the account number. And EOS has taken the position that it didn't have any legal obligation to do that. Yes, Your Honor. So that's not really a fact dispute so much as it's what does the law require EOS to do, right? I mean, we all know they didn't go back, right? Yes, Your Honor. Yeah, okay. So this court laid it out very eloquently in Cribel v. TransUnion back in 2001. While Walton set forth passages from the deposition of the 30B6 EOS representative, Walton went on to argue how the magistrate judge inaccurately summarized the deposition testimony and how the testimony supports Walton's claim that EOS had not established a policy to address disputed accounts. Although Walton did argue in her dispositive motion that the deposition testimony was a judicial admission when she should have argued of additionary admissions, yet EOS did not challenge Walton's argument, therefore they waived the issue. Walton wants to point out that the magistrate judge did not go far enough to the deposition of the corporate representative's testimony who testified that Walton's account was deleted three days after Walton filed a federal complaint, which was almost five months after she disputed the account with EOS, and this in itself shows willful misconduct. This concludes my argument, and if you don't have any further questions, I reserve my remaining time for rebuttal. All right. Thank you very much. Thank you. Mr. Ryan? Good morning, Your Honors. May it please the Court, Ms. Walton. I'm John Ryan, and I'm here on behalf of my client, the appellee EOS CCA. The trial court properly granted summary judgment in favor of EOS on Ms. Walton's FCRA claim. She raises two theories on the FCRA. The first theory is that my client improperly furnished data to the credit bureaus. That theory must be brought under 1681S2A because that is the section that governs furnishing data to the credit bureaus. But she insists that she's proceeding only under B, which is the one where there is a right of action. And I guess if I'm not mistaken, and I'd be interested in your comment about this, the real essence of this is if the problem is in that initial transmission from AT&T to EOS with this mixed-up account number that somebody figured out was transposed, maybe it was transposed, maybe it wasn't transposed, but certainly a different number, your position has to be that there's never any responsibility on the part of the debt collector to sort out that kind of a problem, and it's just baked into the system. So these kinds of issues, it must happen from time to time that there's a mistake in the transmission from the original creditor to the debt collector. And you read some cases pretty broadly to say, well, that's just life is hard. Too bad there's a problem there. Maybe they don't need to be read quite that broadly. Maybe when the consumer is calling to the debt collector's attention, the fact that it's not her account or that this isn't the right thing, maybe that one phone call, could you retransmit the data or something would be called for? Your Honor, that's a fair point. The problem with this case and the facts presented in this case was that this was her AT&T account. The numbers were just transposed. However, the idea of what the problem was about the transposed account number didn't come up until the second ACDV report in late May. And in response to that second ACDV report, the account was deleted. And that's for purposes of the FCRA claim, not the FDCPA claim? It's for purposes of both because in terms of the FCRA claim under Westra, the Seventh Circuit has said when you have all these data points that match, in Westra, the data points that match were the name, the address, and the date of birth. In our case, the data points that matched were the name, the address, and the Social Security number. She was saying, this isn't me, and our data and our system were saying, it's you. And so... But suppose a person had two accounts. The account that has an alleged delinquency of $260-some and an account that's entirely current. Maybe a consumer is paying for an account for their son or something like that. It would make a difference to get the right account number even though all the rest of these data points match. Your Honor, I would concede that point if you knew that the problem was the account number. But until you know that the problem is the account number, all you have is information saying, this isn't me. You match it to what you have, and it is her. It's undisputed that this is her AT&T account. She got a letter from AT&T which she attaches to her second amended complaint on Exhibit A. And the AT&T account sought to collect $268.14. The only difference here is the middle account numbers. I know that that's the alleged swap. I don't know how whether AT&T does it in fields of three and they mixed up the fields. I don't have any idea. But I do know that if I got a letter from AT&T saying that I owed money under a particular account and I pulled out my file and I didn't have an account under that number, I would think it's not my account. Your Honor, I would expect that when you would call, you'd say this is the wrong account number. And if we're in agreement on that point, that's not what happened here. Because that didn't happen here until the second. She says the debt doesn't belong to me, right? That's a broader statement. She says in the first ACDV report that this does not belong to me. Right, right. That's the language she uses. Lots of exclamation points. Correct. She doesn't say that this debt does not belong. She said this does not belong to me. In Westra, the plaintiff in Westra said this account does not belong to me in their first ACDV report dispute. And the Seventh Circuit held when I have all these data points, name, date of birth, and address, I can rely upon that. So, Your Honor, it depends on which statute you're proposing your theory under. Under the FCRA, Westra governs. And so there could be no FCRA claim. Under the FDCPA, we have to look at what section she's bringing her claim under. But we all agree it has to be B, right? Because there's no private right of action under A. And she herself seems to agree, yes, it's B. It's an investigation. Your Honor, respectfully, I think we might have been coming to that point. But what she keeps bringing up is this furnishing of data. And the furnishing of data is governed under A, even though she might caption it to bringing her claim under B. But to the extent that she's challenging the investigation, you're right. It goes under 1681S2B. It goes under B, and it's a question, you know, if that phone call had been made, would the discrepancy in account number that caused you to delete the account eventually have come to light sooner before she allegedly experienced adverse consequences? Well, Your Honor, if we could take a step back a moment. The FCRA doesn't come into play until she actually submits the ACDV report. You don't get into the FCRA simply by picking up the phone and calling the debt collector directly. You have to file an ACDV report first in order to be covered under 1681S2B. So pre the FCRA issue that's triggered by the ACDV, when you're under the FDCPA, is all of this turned on what it means to verify? Is that the key thing? I mean, it seems like she's saying that verification means that you verify the soundness of the underlying debt by going back to the creditor. But I gather that your position, and there's some support for this in Outer Circuit case law, is that no, verify just means verifying for her what the information is so that perhaps she has enough information then to go back and challenge it with the creditor. Is that, am I tracking what the legal issue is? That's correct, Your Honor, because she brings her claim under 1692GB. And that's her claim is 1692GB. She's had two previous attorneys. They've never tried to change the theory or challenge in any other way under FDCPA other than what was alleged in her Second Amendment complaint. And so the 1692GB requires when you receive a dispute, the debt collector to report back to the debtor the name and address of the original creditor. And that's what was done here. But this court can affirm summary judgment on any ground, and one of the grounds was that before 1692GB gets triggered, the debtor needs to submit a written dispute within 30 days. Well, the district court assumed that she'd satisfied that requirement. So it really seems here like this verify, what does it mean to verify, is a more important issue. That is correct, Your Honor, but she didn't because she sent a certified letter and it shows that it didn't get sent. Okay, okay, but verify. I mean, focus me on that. So is it your position then, is that what would decide that issue, what it means to verify? Yes, Your Honor. What it means to verify under 1692GB. The statute is definitive at what it says. So the letter never says, we're looking at our own records. Here's your original creditor. It's up to you if you want to go back to the original creditor and see if there's really a debt or how much the debt is or what the account number is or anything else that's the original creditor. You never tell her that that's why you've put the original creditor's contact information in the letter? That's correct, Your Honor. However, it's creating an unreasonable standard to the point that if the debt collector had to go back and check with the creditor. So the debt collector just had to put a sentence in the letter saying, all we're going to check is our own records. If you think there's a problem with our records, you have to go back to the original creditor. That's just a sentence. That's not burdensome for you. But then, Your Honor, we then might be going into what other sections is that affecting? Because that generally is what happened when we put in sentences in the letter. My clients then get sued under different sections saying that somehow that overshadows their dispute theories. 1692G and A are read separately. 1692GB requires my client to report the name and address of the original creditor. And if my client, the debt collectors, now have to go back to the original creditor every time a debtor says, you have the wrong person, that's going to be an impossible standard. Is there any case law from another circuit that supports the notion that you have to verify it by confirming the validity of the underlying debt? No, Your Honor. There are no decisions from another circuit which says you have to confirm the legal validity of the debt before you proceed or contact the original creditor to confirm your right. In fact, the Seventh Circuit has held that it falls under the bona fide error exception when you rely upon your client original creditor's information that they give you. You fall within the bona fide error defense to an FDCPA claim. And that's what my client did here. Okay. For those reasons, I ask this court to affirm the trial court's 46-page opinion granting my client summary judgment. Thank you. All right. Thank you so much. Anything further, Ms. Walton? Okay. First of all, I filed my complaint under 15 U.S.C. Section 1681.S.2.B., which gives me as a consumer a private right of action. I received a letter in January of 2015 from EOS. I responded to that letter, which it is under Appendix 107. My response to the letter was very clear. It says, I do not owe AT&T any money under the account number listed above. I went further on to contact them again when I received another letter telling them I did not owe that money to them and that was not my account. I have several accounts with AT&T. This was not my account according to the number. The next thing I did is I contacted AT&T. AT&T sent me my money back. So if you look at the Appendix 111, there is a deposit of $600 given to AT&T when I got the U-verse account. They understood the error. I contacted the credit bureaus. The credit bureaus said they understood. I gave them the account that I had from AT&T. They said the number was skewed. If you look at Appendix page 109, I received a letter from EOS, April 7, 2015. They said, we investigated this, put the wrong account number, and they said it's your account. How could you investigate my account when you never reached out to AT&T? Then I went further, and if you go to page 26 of my brief, when we took the deposition of the corporate representative for EOS, the attorney asked the question, do you think you were allowed to contact the original creditor as part of the policy there? I don't think I was allowed to. Well, what do you do? What do you mean you weren't allowed to? Like, I can't contact AT&T for every ACDV I receive. That's what he said. Therefore, they had no intentions. You have to put a person on notice. If it's an account, if it's my account, I need to be able to reference the account. And then I could have told them. He said I should have told them why it wasn't my account. How do you tell someone why it's not your account if it's not your account? The account was paid in full. AT&T was part of the lawsuit that I filed. They settled because they realized there was an error, and they furnished them the wrong information. My problem here, forget about me, EOS, 90% of their collections are for student loans. The average student coming out of college does not have the resources nor the ability, unless they go to law school, to fight them. So that's a blemish that will be on their credit report for seven years. They waited five months after I put them on notice to take this off of my report, and it was only after I filed a complaint. That's all. Thank you. Thank you very much, Ms. Walton. Thanks to you as well, Mr. Ryan. We will take this case under advisement.